Next case is agenda number 3, number 127-535, the people of the state of Illinois v. James A. Pacheco. Counsel, are you prepared to proceed? Please state your name for the record. Good morning, your honors, counsel. May it please the court, I'm Assistant Attorney General Jason Kriegel for the people. Defendant was properly convicted of driving under the influence, aggravated fleeing, and aggravated assault. At trial, defendant cross-examined the state's witnesses at length, focusing almost exclusively on his theory that Officer Stapleton had a motive to be untruthful about the circumstances of the aggravated assault because he had acted improperly. And the trial court reasonably exercised its discretion in limiting that cross-examination in two ways, in placing two modest limitations on the questions that were asked about specific Joliet Police Department policies. And I want to address each of those limitations in turn, but first make a couple of brief points about the overall framework which this court uses to address challenges to limitations on cross-examination. And so what this court said in the Blue and Kleiner cases, and we've also cited a number of other state and federal cases in our brief, the rule is that the confrontation clause guarantees an opportunity to make the jury aware of a particular form of bias or motivation to testify falsely. Once that opportunity has been provided, then the trial court has discretion to police the scope of the cross-examination and based on considerations like relevance, prejudice, confusion, repetitiveness, all of those things. So analyzing any particular question that defense counsel proposes, the court has to ask two questions. First, did the defendant have the opportunity to raise this overall theory of bias? And then if he or she did, did the court abuse its discretion in limiting the scope of that inquiry? In other words, did it weigh the interest in a way that was arbitrary, fanciful, or so unreasonable that no reasonable person would agree? So applying that framework to the first issue in this case, the question about could Officer Stapleton be fired if he had used force improperly? There was no confrontation clause violation here because defendant did have the opportunity and did, in fact, make the jury aware of his theory that Stapleton had used force improperly and that he was now purportedly lying to cover up what had occurred here. And where the appellate court erred below was in not applying the rule that this court set forth in blue and in Kleiner. I'd point the court to page 11 of the appendix where the appellate court said, you know, because the defendant's asking about a potential bias, that's an appropriate line of questioning. And cutting off that question is automatically a confrontation clause violation. The problem with that reasoning is that it applies to virtually every question on cross-examination because every cross-examination is about trying to show reasons why a witness's direct examination might not be credible, you know, whether it's lying or bias or inability to perceive or whatever it may be. And the appellate court rule would be impossible for trial courts to manage when in the course of trial there are objections that come up in the course of cross-examination. This court's rule is much clearer. As long as the defendant has had the opportunity to raise the theory of bias, then it's a matter of discretion for the court to then weigh all of these issues. It doesn't mean that every limit will be permissible, but it's not a constitutional violation once the issue has been raised. And so then the appellate court didn't reach below the issue of whether this particular limitation was an abuse of discretion, but it is clear based on the record that having permitted the extensive cross-examination that the court did allow about this theory of bias, that there was no abuse of discretion in the trial court saying we don't need to get into what are Joliet Police Department policies about when is the use of force appropriate, how is discipline imposed on officers. The defense counsel had more than adequate opportunity to set forth his theory of cross-examination and then in fact argued in closing that Officer Stapleton was lying to protect his interests. And that's why you shouldn't believe his testimony about what happened. What were those interests? Lying to protect his interests. So what was the basis of that since these other questions were not allowed to be asked on cross-examination? Sure, Your Honor. So the interest is that there would be some consequence for using improper, for an improper use of force. And I agree with you. He didn't get to, well, he didn't attempt to explore in depth what exactly those consequences are. But it was proper to say, to say that this is not the central issue of the trial, whether, you know, whether he might be suspended or fired or whether there might be, you know, some criminal obligation or some civil liability that might arise from this. All of those are potential consequences. But the defendant was able to get across the idea that Officer Stapleton had potentially used force improperly. And so now he had an interest in covering that up. It would have been common sense for the jury to understand that there would be some consequence for that. But it was collateral to the central issue of trial, which was defendant's guilt, what precisely that consequence would be. May I ask another question? Clearly the issue of the officer's motive, bias, interest to the untruthful is a relevant issue in this case, correct? Absolutely. So does anybody ever talk about the rules of evidence, Supreme Court rules of evidence in this case, how we look at relevant evidence and what we do with it? I don't think so. How about Rule 403, exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Do you know from the record what was the basis of the court's exercise of discretion in excluding this evidence? What do you say? So what the trial court said was that it was concerned because Officer Sapleton had denied that he had used force improperly, that now there was no evidence to then dive into a discussion of whether he could be fired for this action. And the court was concerned that the line of questioning would just suggest to the jury that, in fact, there's something about police department policies that encourages officers to be untruthful in these circumstances. So, and I would also, you know, I would also suggest that the abuse of the discretion standard doesn't necessarily depend on whether the trial court said, you know, exactly the right, you know, explained its position in exactly the right way or cited exactly the right case at the time, because these issues come up in the course of cross-examination and might just be, you know, the... Counsel, didn't the trial court go a little further and talk about the line of questioning leading to a mini-trial on police department policies, and he thought that that would be taking the questioning in a completely erroneous direction? I think that that is, was underlying the court's reasoning, yes. The worry was that the issue, the primary issue in the case is, you know, whether a defendant committed an aggravated assault. And the defendant obviously put forward the theory that Officer Stapleton had shot at the defendant unjustified. And my question was, did the trial court voice concerns about that questioning leading to a mini-trial on police department policies, and that was something that he did not want to occur in that case? Yes, so the trial court didn't use that terminology, mini-trial, but he did say, you know, I don't think there's any evidence that Officer Stapleton used force improperly, there wasn't any testimony about what exactly is improper force. And it didn't really matter in this case, because the issue was whether defendant, you know, put Officer Stapleton in a reasonable apprehension of being hit with the vehicle, and whether Officer Stapleton should have in those circumstances used force is obviously an important and interesting question, but not the focus of this trial. And what defendant wanted to get across, and what he certainly did get across, was that his theory was that Officer Stapleton was lying about the overall circumstances of how the, where essentially defendant was driving and when he was driving the car. And so even though the trial court didn't say the words mini-trial, I do think that was what was underlying the court's reasoning. And I think that was what was underlying the court's use of active discretion here. Counsel, isn't it a fact that in this case the trial court granted a motion in limine, barring the defense counsel from discussing some police reports that had not been prepared? That's right, Your Honor, that's the second. And wasn't it also complicated by the fact that there were some videos in this case, and the videos didn't actually show what occurred? And I'd like to ask about those videos. Have you got a good copy of Exhibit 6? There is not. So the copy that was in the record was damaged at some point after the trial, and so I don't have the original video. How do they review a case when the jury saw that video, but we're unable to? Right, so, I'm sorry, if I may, everything that the jury saw is in the record. So there is a video of the entire surveillance tape. So the court can see, it's just a matter of fast-forwarding to the point in time where this incident occurred, but all of the video that the jury saw is still in the record. So the jury did get to see Exhibit 6, right? Before it was damaged? Correct, but Exhibit 6 is included in the longer video that is still in the record. So which exhibit is Exhibit 6 included in? There's a, I believe it's on a DVD listed as Exhibit 7, but there's a footnote in a defendant's brief that says, that gives the exact file name, and I'd be happy to provide the court, if it would be helpful, with a filing to explain more exactly what portion of the video. What I really need is the video itself. I understand, Your Honor, and the video is in the record, and so I'd be happy to provide the court with an explanation of exactly where to look in that video to see what the jury saw in Exhibit 6. Can you provide another video? I can attempt to see if it can be located. I know that one of the, when I contacted the State's Attorney's Office, they were having difficulty locating the file. I was told that there is not a policy of destroying files, so it should not have been destroyed, and so we can attempt to find it. But the, I don't think there's any dispute in this case that the record is complete, it has everything that the jury saw, even if the precise way that the video was edited is no longer viewable. But that video is critical because it's a video that shows how this altercation actually began and ended, correct? Well, it shows, so the video is not, the video was not aimed directly at the, where the officers and the defendant were positioned. So you don't actually get to see the assault occur at all. What you see is the cars arriving, and then you see Officer Stapleton running away as defendant is driving off. And all of that is still visible on the record that this court has. Isn't an issue in the case whether or not Officer Stapleton started shooting prior to the car moving? Well, I disagree that that's an issue in this case. The issue is whether the trial court properly limited these two questions on cross-examination. I mean, that was clearly the... Let's remember there's a harmless error argument going on here, too. So there is a sense of, if we were not to be persuaded by your argument, and we wanted to look at the entirety of the evidence, how do we do that? I think that's the question that we're talking about here. Certainly, Your Honor. And all of the evidence, again, it is in the record that this court has. The video is there, it's just a longer video than the short snippet that was shown to the jury. So the entire video, we can look at it to see from start to finish, and everything is there? Exactly, Your Honor. And which exhibit is that? I don't recall off the top of my head the name of the file, but it is in the defendant's brief in the footnote, and I'd be happy to file something with the court to provide additional information. So let me address the harmless error argument in this case, because there are essentially two reasons that, even if this court thinks that there was error, that it was harmless. One, it's that, as I said, it's common sense that a police officer could face consequences for acting improperly on the job. And so there was no need to ask the specific question. Defendant didn't make an offer of proof, so to the extent his argument is that there's some policy that's relevant here that he should have been able to ask about, we don't know what it is, it's not in the record. And then also the evidence was otherwise very strong. Officer Stapleton's testimony was corroborated by the other witnesses, by the video, by the photographs. And then let me just make a couple of points briefly about the second issue, and this is a much more narrow issue about the issue of the question about the written statements. There's no confrontation clause issue here, defendant has conceded that it was forfeited, so it's reviewed only for plain error. He's conceded that the trial court properly found as a factual matter that the officers were not to prepare written police reports, but to give these written statements. And the reason that that's important is because defendant told the trial court that the whole reason that he wanted to ask about this was because he thought that the policy was ambiguous, and that the officers had discretion to write police reports, and the fact that they didn't showed that they were trying to hide something. The trial court said, I agree with you, if you have some evidence that that was the policy, then you can absolutely ask about that. And invited the defendant to bring in such evidence, the defendant did not. And so the basis of the trial court's ruling, he's not really challenging in this court. Instead, what he's arguing is that the existence of this policy shows that there was some kind of code of silence within the department as a whole. The trial court can't have abused its discretion for not allowing a line of questioning that it wasn't, that wasn't necessary. That wasn't presented to it. And then, even so, it wouldn't have been a proper inference to make, because, first of all, we don't know any details about this policy, because there was no offer of proof, but we do know that officers were directed to make video-recorded statements, and there are good reasons for requiring officers to do that, because they may be more accurate and more detailed than written statements. And also, we expect that a written police report acts as an objective statement of what occurred in a particular situation, and it makes sense to say when an officer may be part of the investigation, that that officer should not be the one preparing the investigative report. I see my time is up, so I'll wait for rebuttal. Thank you, Your Honor. Good morning, Your Honors. Opposing counsel. And may it please the Court. Oh, pardon me a moment. My name is Drew Charles Parsons, and I'm from the Third District Office of the Appellate Defender, and I represent James A. Pacheco here today. First, I will begin by addressing how the circuit court abused its discretion in refusing to allow defense counsel to cross-examine the state's law and order. I will also address how the circuit court abused its crucial witness, that being Officer Stapleton, on a matter directly related to Officer Stapleton's credibility, as well as forbidding the questioning of both Officer Stapleton and his partner, Officer Zettergren, about why they did not write police reports about an incident involving an officer shooting a suspect multiple times. Mr. Parsons, was it discretionary with the officers as to whether they could write a report or not? It was the state's position, Justice, that it was not within their discretion. That was the basis for the court, say, determining here that if they could not write the reports by order of their superiors, then there was no improper bias to be found. Was there a policy in that police department that they videotaped as opposed to writing police reports? It was litigated severely on both sides, and there's been a great deal of contention since, Justice. And the third district actually, in its ruling, pointed to, on a footnote, a policy that was read into the record by defense counsel, who read, and I quote, that there was an ambiguity regarding one portion of the manual which stated that an officer who discharges a firearm was to write a report unless physically unable to do so, and that if there were unable to do so, the watch commander would designate a different officer to write the report. However, under further review of the record, we believe that that was a different policy, because there was another motion in the M&A not appealed here about defense counsel being forbidden from asking whether or not their policy was changed because of the officer's actions in this case. Justice Sotomayor, back to the written report. What would you have used the written report for? Your Honor, in this situation, it was an argument about a lack of transparency, and it was a lack of transparency in the sense that it was a written report. In other words, the order itself not to write reports is the subject of what the jury should have been allowed to hear and see. What did that have to do with the specific police officers in this case? You're arguing about a department policy. Well, I think it's clear that there are two different errors here. It's necessary to clear up, because we're not hanging our hat here on just one abuse of discretion. The abuse of discretion that is more fundamental to this issue is the forbidding of counsel at cross-examination about whether or not Officer Stapleton himself feared negative repercussions from his discharge of his firearm seven times into the car that Mr. Petico was driving and five times into his chest, and then deploying his taser on an unarmed civilian who had just informed him that he was shot. I'm still trying to get you to answer the question about the written policy. I'd just like you to answer that for me. Well, to answer the question as best I am able, Your Honor, the officers explained, Officer Stapleton did, under examination at the Motion to Eliminate hearing, that he's not allowed to write reports to quote him directly. It's because of the protection of our union, legal protection, things of that nature. That response to that question leaves no room, I think, for the jury to be able to answer that question. And I think that's a good thing for interpretation. What the Joliet Police Department policy is concerned with in this situation about having no written reports policy. But isn't that a departmental policy? Could this officer change the departmental policy just because he wanted to? I don't think he could change it, Your Honor. But the fact that he was told by his superiors, whether by written policy or by a direct order, orally given, that you're not allowed to write reports when you discharge your weapon into a civilian, I think that's something that the jury would be able to do. And I think that's something that the jury is entitled to hear. Okay. But is the trial court's concern that the questioning would be far – would get far afield from what was at hand before the jury? Is that a legitimate concern of the trial court? Well, I don't think so, Your Honor, in this situation, because the appellate court correctly noted, although it did not reach the issue about whether or not the circuit court abused its discretion, it did, however, point out that its entire reasoning for barring a weapon from being used by a civilian was that it was a legitimate concern of the trial court. And so the question is, what's the evidence of the court's decision? And the evidence is that the trial court was not based on any 403 interpretation. It was based on the misreading of this Court's decision in People v. Adams. In People v. Adams – and I refer the Court's attention to the record, page 830, where the circuit court said, you cannot tie perjury or sworn testimony to employment in a criminal case. And that is the basis for the Court's entire prevention of the line of questioning at issue at trial, which was, do you fear that you would lose your job for shooting a man five times in the chest? And to answer your point, Justice Overstreet, about the issue about facts and what was going on here, this was far from harmless. The video doesn't show, as far as our briefs allege, the entirety of the incident, even if defense exhibits were wholly available to the school. And the video doesn't show that. And so there is a lot of evidence in this Court. There are testimonies given by two eyewitnesses, a Jamie Kirk and his father, Michael McCabe, who differ from the police officer's testimony. The police officer's statement says he's right behind – right in front of the car. It accelerates towards him. He fears for his life, so he draws his weapon, shoots it. He can't say exactly what angle he's sitting at when he fires his gun, and his partner, Officer Zettergren, does not back him up. He said, I don't know where he was when he fired his gun. And did you present that to the jury and argue it? We were not allowed to – we did present – the State's witness, Jamie Kirk, was questioned by the State and was – And cross-examined. Yes, and cross-examined.  Yes, we did argue that in front of the jury, Madam Chief Justice. However, I'd like to point out something from my opponent's statements. Jason Krueger has said repeatedly to this Court, as the State has maintained from the beginning, that the jury was made well aware of the theories of the defense council. I respectfully submit that theories in a court of law mean very little without evidence. And the evidence that was directly sought by this line of questioning was not simply the answer to the question, yes, I would have – I would have argued that. I feared for the loss of my job, but the demeanor, the demeanor in which he would have answered that question, the physical demeanor. As this Court is well aware in Douglas v. Adams, and this is the basis of our constitutional claim, which we have not forfeited, we are arguing that this is both an abuse of discretion and a violation of Mr. Pacheco's fundamental constitutional right to confront the State's main and crucial witness against him. And in Douglas v. Adams, personal cross-examination means not just the opportunity to look – to ask the question. It's about compelling the witness to stand face-to-face with the jury so that they can look at him, judge by his physical demeanor whether or not he's believable or worthy of belief. And Officer Stapleton was not put to that kind of scrutiny here. He was – he was basically protected by a muzzle that was fixed to the mouth of the defense counsel. So if – we were on one track in order – you're saying that if the trial court excludes relevant evidence that because the jury could not see the demeanor of the witness when they answered, that that's a constitutional violation? I'm saying that – Excuse me, sir. That's a big, big jump. You're saying that every – you know, jury trials, as we all know, lots of stuff happens. Objections are made. Things are rolling all the time. And you're saying this one question that where the jury could not see the answer is a constitutional violation? I'm saying, yes, Your Honor, that that is a basis for this Court to find. It's not about just what the jury is not allowed to see. It's about what the jury is shown. And the appellate court correctly ruled in this situation that the defense was not allowed the opportunity to show enough of its theory to the jury. And there – Could you go back to Adams? You were talking about Adams. Yes. The court – I have not read this record yet, but I really am interested to know, what did the court base its ruling on? It based its ruling – What was the judge doing here? Was she invoking Rule 403? What was she doing? Well, it was not an invocation of 403. Of that I am absolutely certain from my review of the record, Your Honor. It was – and the court – the appellate court was correct to point out here that this entire line of questioning was stricken because of the court's belief that it would be committing an error under Adams, wherein Adams, this court, was concerned with the prosecutor's statements made on the closing end of an argument about facts not in evidence. It's totally different from the situation here. The situation here was defense counsel trying to introduce evidence through cross-examination. And so that misreading of Adams became the central point of error in the trial court's forbidding defense counsel from pursuing this line of questioning. And so I think that, and not 403, was its basis. And the idea of – Counsel, did the court say that? Yes. And I refer the court's attention – and this is not the – not the – the motion eliminate issue. This is the other abuse of discretion error, which was the cross-examination of did you fear negative repercussions. And on Record 830, page 830, the court said, you cannot tie perjury or sworn testimony to employment in a criminal case. This was after the court got done discussing a case with State that was not specifically identified at the time, but later on identified as the court's ruling in Peeble v. Adams. And so I think the Third District correctly caught on to the error the judge was making here. It's a broad overexpansion and misapplication of a prosecutorial misconduct case on a cross-examination case. Counsel, what was the perjury that the court was referring to? Not a potential perjury, Your Honor. But in terms of this, this Court has recognized in Peeble v. Ramey, you know, the trial court has no discretion to deny a defendant his right of cross-examination but only to preclude repetitive or unduly harassing interrogation. This was not unduly harassing or unduly prejudicial or even an offer of proof of perjury. This was an exploration into bias. And that bias, whether or not he feared the loss of his job for excessive use of force, was very fertile grounds for cross-examination under the common law or evidentiary right, as this Court has reckoned it, as well as a breach of Mr. Pacheco's fundamental constitutional right to confront the State's crucial witness against him. Because Jamie Kirk, another eyewitness, specifically testified under oath that the car that Mr. Pacheco was driving did not start to move until after the officer opened fire on him. So we have a closely balanced series of evidence, evidentiary principles, differing witness testimonies, and that meant one thing. It was the credibility of Officer Stapleton that was key to this State's case. That gave the defendant, Mr. Pacheco, under People v. Pellitri, the precedent of this Court for almost 100 years, the right to question the witness about any matter which seeks to explain, modify, or discredit the witness's own direct examination. That is the heart of what was denied to Mr. Pacheco at trial. Mr. Parsons, I have another question. Yes, Justice. If Stapleton had answered yes to the question about negative consequences, couldn't the State — wouldn't the State have had an opportunity to respond to that and bring in contrary evidence? I mean — Absolutely, Your Honor.  But wouldn't that have hurt your case? Not necessarily, Your Honor, because the truth about whether or not Officer Stapleton was reasonably in fear of his life was the main issue at trial. And the issue about whether the vehicle was in motion or whether the officer overly used his force by misusing his weapon, all of those elements are just subjects. That's not what I asked. I was asking about the narrow question of asking Stapleton whether he was in fear of losing his job. Your question is, I believe, more to restate it in my own mind, Justice. I apologize. Is whether or not — if he responded, no, I wouldn't fear for the loss of my life or the loss of my job, that would have hurt us? Is that your question? Well, I'm asking wouldn't the State have had the opportunity to bring in counter evidence, you know, if he had answered a way that you felt was not helpful to your client? I believe he could have brought in evidence under that circumstance, but then — Well, wouldn't they have? I mean, who would let that just stand? I think that the basis of that question is — It just seems like you're hanging a lot on that one question. I don't — I'm not sure I understand that. Well, to bring it up to another notch here about what the full parameters of our request for relief here are, is it's not just an abuse of discretion for the denial of the right to cross-examine. It's also an abuse of discretion for the denial of the ability to examine him as to whether there is a why they're not allowed to write their own reports. But isn't that a departmental policy that the officer singly has nothing to do with? I think that as a — So the judge's — Sorry. Another compound question. The judge's concern about putting the departmental policy on trial was well taken, yes? I do not believe it was well taken, Your Honor, because the — in the end, the defense was intending to investigate Officer Stapleton for bias. And that's something that this Court has routinely recognized in its rulings. When it comes to investigating bias, the defense shall be given the widest of latitudes to investigate potential bias. And that was not allowed here. And that was an abuse of discretion on two different respects. One, for the denial of the cross-examination issue. And two, for the denial of the investigation of why in a world filled with police officers who write reports every single day about all kinds of incidents, Joliet City police officers are specifically forbidden from writing reports about officer-involved shooting of unarmed suspects, or any suspect for that matter. But wasn't that the — I mean, as I say, I don't really understand the trial judge's explanation of his ruling. I don't think it's been cleared up here yet. But isn't that — I think what the judge's concern was was suddenly this trial would be spinning out of control. It wouldn't be about what happened there at the railroad crossing. It would be about, as you say, why does Joliet have this policy? And then the jury would be taken completely off track as to what the actual issues in the case were. Isn't that the basis of the trial court's decision? No. Madam Chief Justice, I think the basis of the trial court's decision was a fear of making an error that this very same trial judge was reversed upon in People v. Adams. And it was a misreading of this court's interpretation of Adams. And the Adams case was about facts not in evidence. Whereas this case was about a fundamental exploration of the bias of the State's crucial witness. That crucial factor cannot be denied from the record because of varying different witnesses' accounts contradicting the officer, not supporting the officer, no complete video of the incident. There's only a partial video. Now, since you mentioned video, would the videos assist the court in determining what happened that day? Based on our briefs, Your Honor, the angle of the camera and the reckoning I have of the record in my mind here today is that the private camera of the security footage doesn't show, as counsel has correctly pointed out, the entirety of the incident. It doesn't show where Officer Stapleton discharges his weapon. It doesn't show who was in motion first. It shows the aftermath. This court must rely, then, upon the factors of the closely balanced evidence brought out by the varying testimonies of differing witness accounts. That was fully litigated at trial and preserved in the record. And because it's a closely balanced case of aggravated assault, there's the error that was committed here twice was far from harmless, and it cannot be ignored.  The second issue is raised under plain error. Yes. So it's a completely different analysis, correct? Yes. I misspoke there. I apologize, Your Honor. But the fact is that this case is about the search for truth and how the circuit court limited that search of truth, and improperly, based on its misreading of Adams. And with varying witness testimony, I think the court must address it and correct the circuit court by upholding the appellate court. And there is no other clear path under the law because the discretion of the circuit court cannot outweigh the search for truth under the Constitution or the evidentiary rule of law. And if there are no other questions, I submit my case to court with respect. Thank you. Just a few points in rebuttal. First, to hopefully partially answer Justice Neville's question, I did take a look at the brief again. It's on page 19, footnote 3 of the defendant's brief. The file name, and it's on one of the CDs that's in the record. It's a long name, but for the record, it's ND underscore DO1 underscore CO3 underscore and then 120 and some more numbers. But that's the file that if you look at, the court will be able to see all of the video that the jury saw. Now, to respond to counsel's argument that the jury somehow didn't have an opportunity to observe Officer Stapleton's demeanor or assess these facts, I do want to make clear that Officer Stapleton was on the stand for quite a long time. There's approximately 80 pages of just cross-examination of Officer Stapleton, not cross-examination of Officer Zettergren, the other witnesses. Defendant put some police officers on the stand in his own case. So defendant had the opportunity to cross-examine the state's theory at length. And again, this was his entire theory of the case. He didn't seriously contest the DUI or aggravated fleeing charges. This case was all about what exactly happened in the assault. And what Officer Stapleton said was, he started moving towards me. I feared for my life, and I started firing my weapon. And that was corroborated by Officer Zettergren and by Mr. McAbee, who testified that the car started moving before Officer Zettergren fired the weapon. It was corroborated by the video, which shows Officer Stapleton running away. It was corroborated by the testimony of Mr. Kirk and Mr. McAbee, that defendant was yelling at Officer Stapleton, get out of my way. And it was corroborated by the photographs of the car, which showed the bullet holes through the windshield of the car, suggesting that Officer Stapleton was right in front when he was firing his weapon. Now, to answer Justice Tyson's question about what was the basis for the trial court's ruling here, the reason it's a little bit unclear in the record is because this whole issue came up in the midst of Officer Stapleton's testimony. There was a sidebar about a totally separate issue. And in the course of that discussion, defendant said something to the effect of, I plan to argue that Officer Stapleton is afraid he's going to lose that job that he loves if he tells the truth about what happened here. And it was at that point that the prosecutor objected. And that's why the court at that point raised this Adams case, which dealt with closing arguments, because it seemed what defendant was saying was, I want to argue that Officer Stapleton was going to lose his job. Then, later on, after Officer Stapleton is off the stand, defendant comes back and says, I want to revisit this issue. What I want to do, I want to be able to argue this. And the judge says, tell me what exactly is the question that you want to ask. The question is, can Officer Stapleton, do you think you could lose your job for using improper force or worse? And at that point, there's some further discussion of this Adams case, which the judge says, I think Adams stands for the proposition that you can't argue that a police officer is more or less credible than any other witness. They have to be treated the same. And if we get into this collateral discussion of what exactly did the Joliet Police Department policy say, I think, as Justice Cunningham pointed out, it's going to put the department on trial when the trial is supposed to be about what exactly did the defendant do. So Adams was relevant. But even if this court thinks that the trial court cited the wrong case here, the point still remains that this line of questioning would have inevitably led to a mini trial about what are the department policies. So it was not fanciful or arbitrary to say, I'm not going to let you ask this one question. You've had the opportunity to explore your theory over 80 pages of cross-examination, and that's got to be sufficient. And then, again, the evidence here, as I explained, the evidence was not closely balanced. There was all of this evidence that corroborated Officer Stapleton's account of what happened. Mr. Kirk did seem to testify at first that the car was not moving, but later on cross-examination he said, well, maybe it was moving. And there were other errors with his testimony, such as he only said he saw one police officer, and there's no question that there were two. So the jury had the opportunity, obviously, to weigh all of this evidence, and it found the defendant guilty on these charges. I would just briefly mention that we have sort of a backstop argument. If the court disagrees and thinks that there was an error here and it wasn't harmless with respect to the aggravated assault charge, it certainly was harmless with respect to the DUI and aggravated fleeing charges. Defendant does not seriously contest that at all. He's never had any factual or legal defense to those convictions, and the court should not require a retrial, so at the very least should reinstate those convictions. But we would ask that this court, if there are no other questions, we'd ask that the court reverse the appellate court decision and remand for that court to decide the issues that are still remaining in defendant's original appeal. Thank you.